**Sean Patrick MOSKEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–09–00532–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 10, 2010.

---

Jon A. Jaworski, Law Office of Jon A. Jaworski, Houston, TX, for Appellant.

April Adams Silva, Assistant District Attorney, Patricia R. Lykos, Harris County District Attorney, Houston, TX, for Appellee.

Panel consists of Justices KEYES, HIGLEY, and BLAND.

## OPINION

EVELYN V. KEYES, Justice.

After the trial court denied his motion to suppress evidence, appellant, Sean Patrick Moskey, pleaded guilty to the Class B misdemeanor offense of possession of less than two ounces of marijuana.[1] Pursuant to appellant's agreement with the State, the trial court deferred adjudication of guilt, placed appellant on community supervision for one year, and assessed a $300 fine. In one issue on appeal, appellant contends that the trial court abused its discretion in denying appellant's motion to suppress because the State (1) did not prove that the arresting officers conducted a valid inventory search according to departmental procedures and (2) the search did not meet the requirements of a valid search incident to arrest under *Arizona v. Gant.*[2]

We affirm.

## Background

While patrolling the West Sam Houston Parkway on January 30, 2009, Harris County Sheriff's Deputy F. Ellis noticed that appellant's vehicle displayed an altered or tampered inspection sticker. Deputy Ellis and appellant pulled over onto the shoulder of the road and Deputy Ellis, upon closer examination, observed that the inspection sticker had expired and was partially removed. After returning to his patrol car, Deputy Ellis checked the inspection sticker, license plate, and appellant's driver's license. He confirmed that the inspection sticker had expired, and he further discovered that the vehicle registration had expired and that appellant had two open warrants. Deputy Ellis then called for a second unit.

Once Deputy A. Gonzales arrived at the scene, the deputies conducted a weapons search of appellant and placed him in the backseat of Deputy Ellis's patrol car pending confirmation of the open warrants. Deputy Ellis asked appellant about the altered inspection sticker, and appellant responded that the car belonged to his roommate. Five minutes later, dispatch confirmed the warrants and Deputy Ellis arrested appellant and called a tow truck for his roommate's car.

The deputies, with appellant, and the tow truck driver all drove to a nearby shopping center parking lot to complete an inventory search of the vehicle. At the suppression hearing, Deputy Ellis testified that Harris County Sheriff's Department policy requires that, when no one is available for release of a vehicle after an arrest, the vehicle must be towed and the officers must conduct an inventory search to document any valuable items located in the vehicle before the officers impound the car. Deputy Ellis stated that he did not ask appellant if there was anyone he could call to pick up the vehicle and the deputies did not attempt to call appellant's roommate. According to Deputy Ellis, because the car had an expired inspection sticker and expired registration, and because appellant could produce no proof of insurance, the car was not legally drivable at the time of appellant's arrest and thus the deputies could not release the car to a third party.

---

1. *See* Tex. Health & Safety Code Ann. § 481.121(b)(1) (Vernon 2010).

2. —— U.S. ——, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009).

Both deputies testified that the purpose of an inventory search is to document any valuables found in an impounded car to make sure that all of the contents are returned at the time the police release the vehicle. Deputy Ellis testified that the department has a procedure for searching locked containers found during an inventory search. Although the officers conducting an inventory will search locked containers, they will not search locked glove compartments. In this situation, the officers call a supervisor and attempt to obtain a warrant or consent of the owner. If the glove compartment is unlocked, the searching officer will open the compartment and document the contents. Deputy Gonzales testified that this glove compartment was unlocked. If it had been locked, according to policy, he would not have opened it and inventoried its contents. He also testified that he completed the "tow slip," which is the form provided by the Sheriff's Department to document the contents of an impounded vehicle. This form requires the officer to document the specific items of personal property found in the vehicle by listing the items in columns depending on where in the car the officer finds the item.

At the time Deputy Gonzales completed the inventory search, appellant's vehicle was hooked up to the back of the tow truck in the parking lot. Deputy Gonzales first searched the driver's side and the immediate surrounding area. He obtained the car's keys from the tow-truck driver, but he testified that he did not need to use them at any point during the search. Deputy Gonzales opened the unlocked glove compartment and found miscellaneous papers and a bag containing a "green, leafy substance," later positively identified as marijuana. The State charged appellant with misdemeanor possession of marijuana.

The trial court denied appellant's motion to suppress evidence and did not issue findings of fact and conclusions of law. Appellant pleaded guilty to misdemeanor possession of marijuana, and, pursuant to an agreement between appellant and the State, the trial court deferred adjudication of guilt, placed appellant on community supervision for one year, and assessed a $300 fine.

## Standard of Review

We review a denial of a motion to suppress for an abuse of discretion. *Shepherd v. State,* 273 S.W.3d 681, 684 (Tex.Crim. App.2008) (citing *State v. Dixon,* 206 S.W.3d 587, 590 (Tex.Crim.App.2006)). When we review a trial court's denial of a motion to suppress, we give "almost total deference to a trial court's express or implied determination of historical facts [while] review[ing] *de novo* the court's application of the law of search and seizure to those facts." *Id.* We view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State,* 214 S.W.3d 17, 24 (Tex.Crim.App.2007) (quoting *State v. Kelly,* 204 S.W.3d 808, 818 (Tex.Crim. App.2006)). The trial court is the "sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony." *St. George v. State,* 237 S.W.3d 720, 725 (Tex.Crim.App.2007). The trial court may choose to believe or disbelieve any part or all of a witness's testimony. *Green v. State,* 934 S.W.2d 92, 98 (Tex.Crim.App.1996). We sustain the trial court's ruling if it is reasonably supported by the record and correct on any theory of law applicable to the case. *Laney v. State,* 117 S.W.3d 854, 857 (Tex. Crim.App.2003).

## Validity of Inventory Search

Appellant contends that the trial court erred in denying his motion to suppress

evidence because (1) the State failed to demonstrate that the deputies conducted the inventory search according to departmental policies and (2) the search was not a valid search incident to arrest under *Arizona v. Gant.*

For the first time on appeal, the State contends that appellant lacks standing to challenge the search because, at the suppression hearing, appellant did not introduce evidence that he owned the car or that he had the owner's permission to use the car, and therefore he did not meet his burden of establishing that he had a reasonable expectation of privacy in the car. We conclude that we need not address this issue because, regardless of whether appellant has standing to challenge the search of the vehicle, the State presented evidence from which the trial court could reasonably determine that the arresting officers performed the inventory search pursuant to standardized police procedures and that the search was, therefore, constitutionally valid.

■■■ A police officer's inventory of the contents of an automobile is permissible under the Fourth Amendment if conducted pursuant to a lawful impoundment of the vehicle.[3] *South Dakota v. Opperman,* 428 U.S. 364, 375–76, 96 S.Ct. 3092, 3100, 49 L.Ed.2d 1000 (1976); *Benavides v. State,* 600 S.W.2d 809, 810 (Tex.Crim.App.1980); *Garza v. State,* 137 S.W.3d 878, 882 (Tex. App.-Houston [1st Dist.] 2004, pet. ref'd). Inventory searches protect (1) the vehicle owner's property while the vehicle is in custody, (2) the police against claims or disputes over lost or stolen property, and (3) the police from potential danger. *Op-*

*perman,* 428 U.S. at 369, 96 S.Ct. at 3097; *Garza,* 137 S.W.3d at 882. An inventory search must be conducted in good faith and pursuant to reasonable standardized police procedure. *Colorado v. Bertine,* 479 U.S. 367, 374, 107 S.Ct. 738, 742, 93 L.Ed.2d 739 (1987); *Rothenberg v. State,* 176 S.W.3d 53, 57 (Tex.App.-Houston [1st Dist.] 2004, pet. ref'd); *Garza,* 137 S.W.3d at 882. The inventory search must be designed to produce an inventory of the vehicle's contents and must not be a "ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells,* 495 U.S. 1, 4, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990); *Richards v. State,* 150 S.W.3d 762, 771 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd) (en banc).

■■■ The State bears the burden of establishing that the police conducted a lawful inventory search. *See Gauldin v. State,* 683 S.W.2d 411, 415 (Tex.Crim.App. 1984), *overruled on other grounds by Heitman v. State,* 815 S.W.2d 681 (Tex.Crim. App.1991); *Evers v. State,* 576 S.W.2d 46, 50 & n. 5 (Tex.Crim.App.1978). The State satisfies this burden by demonstrating that (1) an inventory policy exists and (2) the officers followed the policy. *Moberg v. State,* 810 S.W.2d 190, 195 (Tex.Crim.App. 1991) (citing *Evers,* 576 S.W.2d at 50 & n. 5). The State need not prove that the impoundment and subsequent inventory was the least intrusive means of securing the vehicle and keeping it safe, nor must the State prove that the officers independently investigated possible alternatives to impoundment. *See Bertine,* 479 U.S. at 374, 107 S.Ct. at 742 (quoting *Illinois v.*

---

**3.** The State bears the burden of proving that an impoundment is lawful, and may satisfy this burden by demonstrating that (1) the driver was arrested, (2) no alternatives other than impoundment were available to ensure the vehicle's protection, (3) the impounding agency had an inventory policy, and (4) the policy was followed. *Garza v. State,* 137

S.W.3d 878, 882 (Tex.App.-Houston [1st Dist.] 2004, pet. ref'd) (citing *Delgado v. State,* 718 S.W.2d 718, 721 (Tex.Crim.App.1986)). Appellant does not challenge the lawfulness of the impoundment; he only contends that the State failed to produce evidence that the officers conducted the inventory search pursuant to proper police procedures.

*Lafayette,* 462 U.S. 640, 647, 103 S.Ct. 2605, 2610, 77 L.Ed.2d 65 (1983)); *Garza,* 137 S.W.3d at 882 (citing *Mayberry v. State,* 830 S.W.2d 176, 180 (Tex.App.-Dallas 1992, pet. ref'd)). In conducting an inventory search, the police may permissibly search locked and unlocked containers, including glove compartments. *See Opperman,* 428 U.S. at 376 n. 10, 96 S.Ct. at 3100 ("[O]nce the policeman was lawfully inside the car to secure the personal property in plain view, it was not unreasonable to open the unlocked glove compartment, to which vandals would have had ready and unobstructed access once inside the car."); *Bertine,* 479 U.S. at 374 n. 6, 107 S.Ct. at 742; *Guillett v. State,* 677 S.W.2d 46, 49 (Tex.Crim.App.1984) (holding no distinction exists between unlocked glove compartment in *Opperman* and Guillett's locked glove compartment, and therefore inventory search permissibly conducted); *Rothenberg,* 176 S.W.3d at 57 (permitting opening of closed and locked containers if done pursuant to standard procedure and not done in bad faith or for solely investigatory purposes).

■ Appellant relies on the Court of Criminal Appeals' decision in *Gauldin* for the proposition that the State failed to present evidence of "actual adherence to standard police inventory procedure." 683 S.W.2d at 415. In *Gauldin,* one officer testified that he and another officer searched the defendant's truck. *Id.* Only that officer testified, and he stated that he did not complete an inventory of the vehicle and that he was unaware of whether another officer completed the inventory. *Id.* The Court of Criminal Appeals held that, in the absence of testimony that the officers followed departmental inventory procedures, the State failed to satisfy its burden to prove that the officers conducted a valid inventory search. *Id.*

Here, in contrast to *Gauldin,* both Deputy Ellis and Deputy Gonzales testified that Harris County Sheriff's Department policy requires deputies to impound a vehicle whose occupants have been arrested and to conduct an inventory search when there is no one to whom the officers can release the vehicle. In this situation, the officer conducting the search must complete an inventory form documenting the personal property found within the vehicle in an effort to protect the owner's valuables. Pursuant to the departmental policy, officers search closed and locked containers, as well as unlocked glove compartments. If, however, the glove compartment is locked, the searching officer must contact a supervisor and obtain a search warrant or get the owner's consent to search.

Both deputies testified that they needed to impound the vehicle appellant was driving and conduct an inventory search because there was no one to whom the officers could release the vehicle. According to Deputy Ellis, even if appellant had not been alone in the vehicle, the expired registration, inspection sticker, and lack of proof of insurance rendered the car unable to be legally driven from the scene. After arresting appellant, a tow truck arrived and towed the car to a nearby parking lot because department policy does not allow deputies to conduct inventory searches on the side of the road for safety reasons. Both deputies testified that Deputy Gonzales performed the inventory search and filled out the required inventory form, specifically stating the items he found in the passenger compartment and in the trunk. The trial court admitted the completed inventory form into evidence at the suppression hearing. *See Graves v. State,* 307 S.W.3d 483, 492 (Tex.App.-Texarkana 2010, pet. ref'd) ("Burns' affidavit, report, and inventory form indicate he complied with the police policy for inventory searches."). Deputy Gonzales stated that the glove compartment was unlocked, and

he therefore opened the compartment to complete the inventory pursuant to departmental policy. Deputy Gonzales then discovered the marijuana in the unlocked glove compartment.

We hold that, based upon the testimony of Deputy Ellis and Deputy Gonzales, the trial court reasonably could have determined that Deputy Gonzales conducted the inventory search of appellant's vehicle in accordance with standardized police procedures. Because the State satisfied its burden to demonstrate that the deputies conducted a valid inventory search, the trial court did not abuse its discretion in denying appellant's motion to dismiss.

### Applicability of *Arizona v. Gant*

█ Appellant finally contends that, even if the deputies followed departmental policy in conducting the inventory search, this search did not meet the requirements for a valid search incident to arrest pursuant to *Arizona v. Gant. See* — U.S. ——, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009).

In *Gant,* the Supreme Court limited the scope of the search incident to arrest doctrine and provided that:

> Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest.

*Id.* at 1723. Appellant contends that because it is undisputed that, at the time of the search, Deputy Ellis had placed appellant in the backseat of his patrol car, and the vehicle did not contain evidence of the offenses of arrest—appellant's two open warrants—the search conducted by Deputy Gonzales was not a valid search incident to arrest, and therefore the trial court erred in denying appellant's motion to suppress.

█ Appellant correctly observes that the search at issue here does not meet *Gant's* requirements for a valid search incident to arrest; however, he fails to consider the Supreme Court's statement immediately after setting forth the new search-incident-to-arrest requirements: "When these justifications [for a search incident to arrest] are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or *show that another exception to the warrant requirement applies." Id.* at 1723–24 (emphasis added). The inventory search is a "well-defined exception" to the Fourth Amendment's warrant requirement. *Bertine,* 479 U.S. at 371, 107 S.Ct. at 741; *Opperman,* 428 U.S. at 369 n. 4, 96 S.Ct. at 3097 ("In view of the noncriminal context of inventory searches, and the inapplicability in such a setting of the requirement of probable cause, courts have held and quite correctly that search warrants are not required, linked as the warrant requirement textually is to the probable-cause concept."). Because the search here satisfies the requirements for a valid inventory search, an independent exception to the Fourth Amendment's warrant requirement, we hold that *Gant* does not apply.

### Conclusion

We hold that the trial court correctly denied appellant's motion to suppress evidence and therefore affirm the order of the trial court deferring adjudication of appellant's guilt.